**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL TURNER, | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-00272 |
| v. | ) | Judge Sharon Johnson Coleman |
| CITY OF CHICAGO, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

After the Court granted defendant City of Chicago's motion to dismiss plaintiff Michael Turner's *Monell* claim in December 2019, Turner filed the present one-count second amended complaint realleging his *Monell* claim. Before the Court is the City's motion to dismiss the second amended complaint under Federal Rule of Procedure 12(b)(6). For the reasons outlined below, the Court grants the City's motion with prejudice.

**Background**

The Court takes the following facts from the second amended complaint and treats them as true for the purposes of this motion. On January 14, 2017, Turner was outside of his family-owned auto repair shop in Chicago, Illinois, where he was sitting in a parked car with the engine off and without possession of the car's keys. Two Chicago police officers, David Bachlar and Craig Coglianese, approached Turner in the parked vehicle, and without reasonable suspicion or lawful basis, asked him what he was doing. The officers then ordered Turner out of the car and handcuffed him. When Turner asked if he was under arrest, the officers denied it.

Officer Bachlar then searched the car without Turner's consent while Officer Coglianese detained Turner. According to Turner, the officers began questioning him about why he was on the premises and how the car could have been parked there because Turner did not have a valid driver's

license.  While Turner was still handcuffed, the officers forcefully grabbed Turner and knocked him unconscious.  He awoke on the ground with fractures, lacerations, deformed teeth, abrasions, and blood covering his body.  Criminal proceedings were initiated against Turner and then resolved in his favor at a June 2018 bench trial in the Cook County Circuit Court.  Turner alleges that at his bench trial, Officer Bachlar provided false testimony about the January 2017 incident stating that Turner resisted arrest and fled from the officers.

Turner further alleges that Officers Bachlar and/or Coglianese have participated in previous unlawful encounters similar to his experience in January 2017.  He states that the City continues to deploy these officers without improved supervision or training.  According to Turner, there exists within the Chicago Police Department ("CPD") certain policies and procedures which lead to unconstitutional injuries of civilians, including Turner.  Specifically, he alleges that these policies and practices include:

- Failing to invest in the resources, facilities, staffing, and planning required to train a department of approximately 12,000 members;

- Allowing department-wide use of excessive force in violation of the Fourth Amendment;

- Failing to accurately document and meaningfully review officers' use of force perpetuating a pattern of unreasonable force;

- Putting in place policies and practices that impede the investigation of officer misconduct;

- Conducting investigations that are neither complete or fair;

- Failing to take sufficient steps to prevent officers from deliberately concealing misconduct;

- Employing a discipline system that lacks integrity and does not effectively deter misconduct; and/or

- Failing to provide officers with sufficient direction, supervision, or support to ensure lawful and effective policing.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**Discussion**

To successfully allege a claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a plaintiff must show "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force' behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019); *see also Bridges v. Dart,* 950 F.3d 476, 479 (7th Cir. 2020) ("In order to hold a government entity such as a municipality or county liable under section 1983, the plaintiff must demonstrate that the government entity [] itself caused the constitutional violation at issue."). As to the municipal action, the constitutional deprivation can be caused by an express municipal policy, a widespread practice that is so permanent that it constitutes a practice with the

3

force of law, or a decision by a municipal agent with final policymaking authority. *Ruiz-Cortez*, 931 F.3d at 598; *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

*Widespread Practice or Custom*

In Turner's second amended complaint, he lists several alleged *de facto* policies and practices related to the CPD. To sufficiently allege the existence of a widespread practice so permanent that it constitutes a policy with the force of law, Turner must set forth some facts that his incident was not an isolated or random occurrence. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom."); *see also Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) ("We have not adopted bright-line rules defining 'widespread custom or practice,' but there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events.").

Turner conclusively states that the City's policies of nonfeasance create "unwarranted and unlawful treatment of civilian citizens, including plaintiff." Nonetheless, Turner does not reference any specific instances of harm to other citizens, but rather cites a 1972 report by United States Representative Ralph H. Metcalf concerning the CPD and officer misconduct. Without more context showing similarities to the present circumstances, the Court cannot reasonably infer that there is such a pervasive practice or custom within the CPD which caused Turner's constitutional injuries. Turner's threadbare assertion that other instances similar to his have occurred in some manner, by some unspecified officers, during an unspecified time period, does not raise Turner's claim for relief above speculation. *See Twombly*, 550 U.S. at 555.

*Failure to Train, Investigate, Supervise, and Discipline*

Next, Turner alleges that his injuries arise from the CPD's failure to train, investigate, supervise, and discipline officers in relation to the illegal use of force. Failure to train "may serve as

4

the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). A prerequisite to deliberate indifference is that "the defendant must have actual or constructive notice of a problem." *Miranda v. County of Lake*, 900 F.3d 335, 345 (7th Cir. 2018). Actual or constructive notice can be shown by a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson,* 563 U.S. 51, 62, 131 S. Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citation omitted).

Because Turner has failed to allege any other instances of constitutional violations or similar injuries by Chicago police officers other than his own, there are limited additional facts in his second amended complaint that would lead to a reasonable inference of deliberate indifference. Turner, for example, alleges that "[O]fficers Bachlar and/or Coglianese have participated in previous unlawful encounters similar to the above-mentioned behaviors, exhibiting a pattern of unconstitutional acts for at least a decade prior to January 14, 2017," and yet the CPD "continued to deploy said officers, without improved supervision or training, to Chicago streets." Outside of these bare-boned statements, there are no further facts substantiating these allegations giving them texture or context. Without more, all Turner has provided is a threadbare recitation of a failure to train claim under *Monell*, which is exactly the type of assertion that *Iqbal* forbids. Even if Chicago police officers have engaged in similar, unlawful acts, Turner has not sufficiently alleged that the CPD had actual or constructive notice of such problems. Because no other facts link these allegations to particular instances of police misconduct, there is not enough for this Court to draw a reasonable inference that the CPD is at fault under this theory of liability.[1]

---

[1] Although the Court is aware of reports in recent years concerning complaints about police misconduct directed at certain demographics within the City of Chicago, the law, including the federal pleading standards, requires litigants to allege sufficient facts plausibly stating their claims for their cases to survive motions to dismiss.

*Final Policymaking Authority*

Last, Turner has not adequately alleged that someone with final policymaking authority was involved in the deprivation of his constitutional rights. Instead, he broadly states that these established policies and procedures "were adopted and promulgated through the actions and inactions of senior and immediate supervising officers of the Department and are thereby ratified by defendant." Again, Turner provides no framework as to who these supervising and immediate officers were, what their involvement was with the present case or others, and what "actions and inactions" they took which purportedly ratified this type of conduct. Any such allegations are necessary to tie Turner's injuries back to a person with final policymaking authority over municipal action or inaction. In sum, Turner has failed to allege sufficient facts to nudge his final policymaker allegations across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570; *Taha v. Int'l Bhd. of Teamsters, Local 781,* 947 F.3d 464, 472 (7th Cir. 2020).

**Conclusion**

For the foregoing reasons, this Court grants defendant's motion to dismiss with prejudice because plaintiff has had at least one opportunity to amend his pleadings. *See Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015). [43]. Civil case terminated.

IT IS SO ORDERED.

Date: 3/31/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge